UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
: 
AMIN D. BOOKER, :
:
                              Plaintiff, :            10 Civ. 4796 (KBF)
:
            -v-                          :            OPINION & ORDER
:
LIEUTENANT M. TOKARZ, CAPTAIN M. :
ROYCE, ROBERT ERCOLE, and NORMAN :
BEZIO, :
:
                              Defendants. :
:
-----------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

Pro se plaintiff Amin Booker brings this section 1983 action against

defendants Lieutenant M. Tokarz, Captain M. Royce, Norman Bezio, and Robert

Ercole for alleged violations of his First, Eighth, and Fourteenth Amendment rights

under the U.S. Constitution. On August 15, 2012, plaintiff moved for summary

judgment on his due process and free exercise claims. On August 24, 2012,

defendants cross-moved for summary judgment on all claims.

For the following reasons, plaintiff's motion for partial summary judgment is

DENIED, and defendant's motion for summary judgment is GRANTED in part and

DENIED in part.

## I. BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 for alleged constitutional

violations tied to a series of adversarial interactions with the authorities at Green

1

Haven Correctional Facility ("Green Haven").  For the sake of simplicity, the Court provides a summarized version of these interactions, omitting most facts that are not supported by evidence that would be admissible at trial.

The conflict giving rise to this suit began sometime in May 2008, when Lieutenant Tokarz ordered a block officer to lock Booker in his cell and issue him an inmate misbehavior report ("IMR") for having served too many scoops of ice to a fellow inmate.  (Second Amended Compl. ¶¶ 10-11, ECF No. 21.)[1]  The block officer locked plaintiff in his cell for the night but did not issue an IMR.  (Id. ¶ 12.)

On May 23, 2008, Tokarz met with Booker in connection with a grievance that Booker filed against Sergeant Kingston (not a party to this suit).  (Id. ¶ 13.) Booker alleges that Tokarz became angry about his grievance against Kingston and about his failure to receive an IMR in connection with the ice incident.  (Id. ¶ 14.) At the possibility of Booker filing a grievance against him for his failure to investigate Kingston, Booker claims that Tokarz told him that "he would personally see to it that plaintiff gets fucked up so bad, and that his grievance would . . . be dismissed . . . the same way [Tokarz] is dismissing the current grievance."  (Id. ¶ 16.)  In a June 10, 2008, memorandum, however, defendant Tokarz denied threatening Booker with retaliation.  (Kim Decl. Ex. C at 4, ECF No. 54.)

Plaintiff later filed a second grievance, this time against Tokarz for his conduct on May 23, 2008.  (Id. at 1-3.)  Ercole assigned Captain Royce to investigate the grievance.  (See id. at 5-6.)

---

[1] Plaintiff's Second Amended Complaint is sworn under penalty of perjury.  The Court therefore treats it as a verified complaint.

On June 9, 2008, Tokarz and a second officer strip searched plaintiff and took him to the special housing unit ("SHU"). (See Booker Decl. Opp'n Defs.' Mot. Summ. J. ¶¶ 7-9, ECF No. 61.) Tokarz and the other officer filed reports claiming the search found marijuana. (See Pl. Exs. 3, 5, ECF No. 24.) Booker denies the possession of marijuana (Booker Decl. Opp'n Defs.' Mot. Summ. J. ¶ 19, ECF No. 61), and claims that Tokarz confessed to him that the officers' conduct was specifically in retaliation for Booker's grievance (See Second Amended Compl. ¶ 21, ECF No. 21).

Royce presided at the administrative hearing regarding the marijuana. (See, e.g., Kim Decl. Ex. E, ECF No. 54.) Royce found plaintiff guilty and imposed a penalty of (a) loss of six months of good time credit, (b) three months in the SHU, and (c) three months loss of packages, commissary, and phone privileges.[2] (See Kim Decl. Ex. F, ECF No. 54.) Plaintiff appealed this decision to defendant Bezio. (See Kim Decl. Ex. G, ECF No. 54.) In connection with his transfer to the SHU, plaintiff also alleges that defendants Royce and Tokarz arranged to have some of his property taken. (Second Amended Compl. ¶ 35, ECF No. 21; see also Pl. Ex. 22, ECF No. 24.)

Then in early August 2008, Officer Williams issued Booker a second IMR, this time purportedly finding gang-related materials in his cell. (See Kim Decl. Ex. H, ECF No. 54.) Royce again presided over an administrative hearing regarding

---

[2] Bezio affirmed the decision. Plaintiff then brought an Article 78 proceeding in state court, where the Appellate Division annulled the disposition of the hearing on the ground that — despite Booker's specific requests and objections — Royce failed to admit into evidence (or provide Booker) any document or testimony validating the procedures used to test the substance alleged to be marijuana. See Booker v. Ercole, 901 N.Y.S.2d 719, 719-20 (N.Y. App. Div. 2010).

these charges. (See Kim Decl. Ex. I, ECF No. 54.) Booker's defense was essentially twofold: (1) that the charges were trumped up and that he did not possess gang-related materials, and (2) that he never received the rulebook informing him of the prohibition of such materials. (See id. at 13-20; Second Amended Compl. ¶¶ 36, 38, ECF No. 21.)

In connection with this hearing, Booker claims (and defendants point to no contrary evidence) that Royce personally threatened him with physical harm if he continued to file grievances, but that if he pleaded guilty and stopped filing grievances, he would receive a light sentence and possibly get his missing property back. (See Second Amended Compl. ¶¶ 45-46, ECF No. 21.) Booker did plead guilty and received a sentence of a reprimand and two months' loss of packages, commissary, and phone privileges. (See Kim Decl. Ex. J, ECF No. 54.) He appealed this decision, and defendant Bezio reversed it for "failure to maintain evidence for review." (Kim Decl. Ex. K, ECF No. 54.)

While in the SHU, Booker was prevented from attending the Friday and Saturday services and study groups required by his Muslim faith. (Second Amended Compl. ¶¶ 49-51, ECF No. 21.) He was denied access to hair trimmers necessary to remove body hair, as required by his Muslim faith. (Id.) He was denied the ability to participate in the Family Reunion Program. (Id. ¶¶ 52-60.) He was denied access to earn wages. (Id.) He was denied access to recreational equipment for exercise. (Id.) His access to the law library was limited. (Id.) He was locked in his cell twenty-three hours per day and was cuffed and shackled each

time he left his cell. (Id.) Booker was held next to a disturbed inmate who set fires in his cell, rendering Booker's cell smoky and noisy. (Id.) He was also served small portions of cold food, and unknown officers claimed to have tampered with his food. (Id.; Booker Decl. Opp'n Defs.' Mot. Summ. J. ¶ 33, ECF No. 61.) Because of these problems with his food, he lost over sixteen pounds over the course of the three months he spent in the SHU. (Booker Decl. Opp'n Defs.' Mot. Summ. J. ¶ 33, ECF No. 61.) During this time, Tokarz visited plaintiff and taunted him, saying: "I told you I would get your dumb ass[.] I told you that this is my house, but you had to be a wise ass and write the grievance and try me[,] didn't you." (Second Amended Compl. ¶ 68, ECF No. 21.; see also Pl. Ex. 15, ECF No. 24; Pl. Ex. 66.)

After leaving the SHU, defendants required Booker to attend a six month drug rehabilitation program and transferred him to a correctional facility approximately five hours farther away from his family. (Id. ¶¶ 60-63.)

As a result of those incidents, plaintiff alleges four types of constitutional violations:

1. **Free exercise violations** against defendants Royce, Bezio, and Ercole in connection with the limits on Booker's religious practice in the SHU;

2. **Procedural due process violations** against defendants Royce, Bezio, and Ercole in connection with Booker's disciplinary hearings and loss of property;

3. **Eighth Amendment violations** against defendants Royce and Tokarz in connection with Booker's conditions in the SHU and the other penalties imposed at the disciplinary hearings; and

4. **Retaliation** (in violation of the First and Fourteenth Amendments) on the part of defendants Royce and Tokarz in connection with the threats and other adverse actions taken in response to Booker's grievances and administrative hearings.

## II. DISCUSSION

### A. <u>Standard for Summary Judgment</u>

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). In making that determination, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir.2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the non-movant must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); <u>see also</u> <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir.2009). "A party may not rely on mere speculation or conjecture as to the

6

true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  In addition, self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment.  See BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.- Conn., 77 F.3d 603, 615 (2d Cir. 1996).  Only disputes over material facts — i.e., "facts that might affect the outcome of the suit under the governing law" — will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

## B. The Parties' Cross Motions for Summary Judgment

Plaintiff moved for summary judgment on two sets of claims: (1) the procedural due process claims, and (2) the free exercise claims.  Defendants moved for summary judgment on all claims.  Because plaintiff's Eighth Amendment and procedural due process claims are deficient as a matter of law, defendants are entitled to summary judgment as to those claims.  Because both parties have shown disputed issues of material fact in support of and in opposition to plaintiff's retaliation and free exercise claims, summary judgment on those claims must be denied (as to certain defendants).

### i. Free Exercise

Plaintiff claims that defendants Royce, Bezio, and Ercole violated his rights under the Free Exercise Clause of the First Amendment as incorporated against the states by the Fourteenth Amendment. Construing plaintiff's submissions liberally, as the Court is required to do, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), his papers present an as applied challenge to the constitutionality of the SHU policy that prevented him from practicing his religion.[3] Because Booker has shown facts sufficient to support such a challenge, defendants are not entitled to summary judgment on these claims.

To prove a violation of his free exercise rights, plaintiff must first show "that the disputed conduct substantially burdens his sincerely held religious beliefs."[4] Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006). Once he makes that showing, defendants bear the light burden of "identifying the legitimate penological interests that justify the impinging conduct." Id. at 275. Moreover, as with any section 1983 claim against defendants with qualified immunity,[5] plaintiff must also show:

---

[3] Plaintiff's papers frame this challenge as one arising out of his allegedly wrongful conviction at the first disciplinary hearing. Nothing in the record, however, suggests that any defendant had contemplated the possibility (let alone intended) that the punishment resulting from that hearing would prevent Booker from practicing his religion. Given defendants' qualified immunity, the Court therefore interprets his challenge to be against the defendants in their capacity as officials responsible for SHU policy.

[4] The Second Circuit has hitherto assumed that the substantial burden test, derived from O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), remains good law, even after Employment Division v. Smith, 494 U.S. 872 (1990), severely curtailed the scope of the Free Exercise Clause in other contexts. See Salahuddin v. Goord, 467 F.3d 263, 274 n.3 (2d Cir. 2006). As neither party presented the issue here, this Court, too, will proceed under that assumption.

[5] Defendants argue that Royce, Ercole, and Bezio are entitled to qualified immunity. Plaintiff does not dispute that argument, instead arguing that he is entitled to damages from defendants notwithstanding their qualified immunity. The Court therefore analyzes the liability of Royce, Ercole, and Bezio, as protected by qualified immunity.

(1)  That the right violated was "clearly established," <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009);

(2)  That, in the specific context of this case, defendants could have had an objectively reasonable belief that their conduct did not violate plaintiff's rights, <u>see Wilson v. Layne</u>, 526 U.S. 603, 615 (1999); and

(3)  That defendants were personally involved in the infringing conduct, <u>see Ashcroft v. Iqbal</u>, 556 U.S. 662, 677 (2009).

Here, Booker has shown that the conditions of his SHU confinement substantially burdened the practice of his sincerely held religious beliefs.  In his Second Amended Complaint, he states, under penalty of perjury, that he is a devoted Muslim and that he is required to attend Jumah services and to make Fithra, the removal of body hair.  (Second Amended Compl. ¶¶ 49-51, ECF No. 21.) He claims that, outside the SHU, he regularly engaged in these practices.  (Id. ¶ 56.)  He describes the restrictions on his religious practices as "defendants['] policy," and notes that Bezio was director of the SHU and that Ercole was the superintendant of Green Haven.  (Id. ¶¶ 7-8, 51.)  He further claims that defendants denied his requests for accommodation to practice his religion.  (Id. ¶ 51.) Construing his submissions liberally, this showing is sufficient to support each element of his free exercise claims against defendants Bezio and Ercole.[6]

---

[6] Plaintiff does not claim that defendant Royce, in particular, had anything to do with the SHU policy preventing defendant from practicing his religion.  Because Royce's job does not suggest he has any authority over SHU policy, and because he has qualified immunity, Royce is therefore entitled to summary judgment on this claim.

Defendants do not dispute that the SHU policy substantially burdened plaintiff's practice of his sincerely held religious beliefs. Nor do they dispute that they were personally involved in the creation or implementation of that policy, or in the denial of plaintiff's requests for accommodation. Their only contentions are (1) that because the putatively infringing conduct occurred as an ordinary incident of confinement in the SHU, defendants have satisfied their burden to demonstrate a legitimate penological interest; (2) that any violation was not of a clearly established right; and (3) that they were not aware that their actions violated plaintiff's rights. (Defs.' Mem. Law Supp. Defs.' Mot. Summ. J. 19-21, ECF No. 51; Defs.' Mem. Law Opp'n Pl.'s Mot. Summ. J. 7-8, ECF No. 57.)

Defendants have not shown facts entitling them to summary judgment on this claim. First, defendants have failed altogether to support their claim that the SHU policy is justified by a legitimate penological interest. Rather than point to specific facts about plaintiff's confinement, they merely assert that his practice of religion was burdened as a result of his confinement in the SHU. While such confinement may, under certain circumstances, justify burdening plaintiff's practice of religion, the fact of his confinement alone does not suffice to justify it. Indeed, the only case defendants cite in support of their proposition instructs courts not to "simply assume that prison officials [are] justified in limiting a prisoner's free exercise rights when the prisoner [is] in disciplinary confinement." Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993). Rather, courts are to engage in "a case-by-case analysis because not all segregated prisoners are potential troublemakers." Id.

(internal quotation marks and citation omitted); see also Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989). Defendants have not pointed to a single fact that would support their contention that the burden on plaintiff's religion was justified by legitimate penological interests.

Second, defendants have also failed to demonstrate their entitlement to qualified immunity on plaintiff's free exercise claims. As a general matter, it is "clearly established . . . that prison officials may not substantially burden inmates' right to religious exercise without some justification." Salahuddin v. Goord, 467 F.3d at 275-76. Defendants would nonetheless be entitled to qualified immunity on this claim if they could show that, in this specific case, it was objectively reasonable for them to believe they were not violating plaintiff's rights.[7] Here, again, they have made no effort to support such a showing.[8] Nevertheless, because the record clearly shows that plaintiff was placed in the SHU for disciplinary reasons related to the possession of marijuana, a jury could find that it was objectively reasonable for defendants not to have believed they were violating plaintiff's First Amendment rights.

Accordingly, plaintiff's and defendants' motions for summary judgment must be DENIED as to the free exercise claims, except that defendant's motion for summary judgment as to defendant Royce is GRANTED.

---

[7] Defendants claim not to have been aware of violating plaintiff's rights. However their subjective awareness of a constitutional violation is irrelevant. The inquiry for purposes of qualified immunity is an objective, not subjective, one. See Anderson v. Creighton, 483 U.S. 635, 639 (1987); Doe v. Marsh, 105 F.3d 106, 109-10 (2d Cir. 1997).

[8] Indeed, a parsimonious reading of defendants' papers might have entitled plaintiff to summary judgment on this claim.

11

## ii. Due Process

Plaintiff claims that defendants Royce, Bezio, and Ercole violated his due process rights by conducting his administrative hearings in a biased manner, by failing to follow state regulations, by finding plaintiff guilty with insufficient evidence, by manufacturing false evidence with which to find plaintiff guilty, by threatening plaintiff in order to force him to plead guilty, by improperly searching his cell, and by taking his property without process.[9]

To prove his due process claims, plaintiff must first show that defendants deprived him of a protected liberty interest. See Tellier v. Fields, 280 F.3d 69, 80 (2d Cir. 2000). If they have, plaintiff must then show that the deprivation occurred without due process of law. Id. Due process of law, in turn, requires that prisoners in plaintiff's circumstances be afforded: "advance written notice of the charges against [them]; a hearing affording [them] a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken."[10] Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). These findings must be "supported by some evidence in the record." Superintendant v. Hill, 472 U.S. 445, 454 (1985). But any reliable evidence will do. See Sira, 380 F.3d at 69.

---

[9] Plaintiff does not allege that Tokarz was responsible for affording him any procedural due process. The Court accordingly declines to read his complaint to assert a due process claim against Tokarz.
[10] The impartiality required of prison hearing officers is not that required of judges. Some conflicts of interest are permitted. See Johnson v. Goord, 487 F. Supp. 2d 377, 401 (S.D.N.Y. 2007) (citing Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989)).

Plaintiff only claims to have suffered two plausibly cognizable deprivations: his loss of property after being transferred to the SHU and his confinement in the SHU for three months in arguably more than ordinarily oppressive conditions.[11] Booker fails to state a claim with respect to the loss of his property, as he only makes a conclusory allegation that he was denied a post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). Accordingly, the Court only considers plaintiff's due process allegations in connection with the hearing in which the SHU confinement was imposed.

Plaintiff does not point to procedural errors related to his first disciplinary hearing sufficient to make out this constitutional claim. On the one hand, many of the alleged faults with that hearing are insufficient as a matter of law to make out a due process violation. That is the case, for instance, with the claims relating to: Royce's refusal to permit plaintiff to call witnesses whose testimony he deemed irrelevant, Royce's failure to provide the forms validating the marijuana test results in violate of state regulations, Royce's conflict of interest in having heard plaintiff's grievance against Tokarz, Royce's refusal to permit plaintiff to examine each of his witnesses without restraint, and Royce's investigative role as a hearing officer (collecting some evidence and asking questions of some witnesses). Such conduct, while not a model of adjudicative best practices, does not rise to the level of a violation of due process under the deferential standard federal courts must use to

---

[11] Plaintiff also claims that he lost good time credits as a result of his first disciplinary hearing. Defendants, however, point to the fact that his first hearing was reversed in state court and his good time credits were reinstated. Because plaintiff does not rebut that argument or claim that he could have been released before the credits were reinstated, that is not a cognizable deprivation under the Due Process Clause. See Horne v. Coughlin, 155 F.3d 26, 31 n.3 (2d Cir. 1998).

review prison disciplinary hearings. See Hill, 472 U.S. at 455-56; Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003).

On the other hand, the alleged procedural errors that could constitute violations of due process either did not occur in connection with plaintiff's first administrative hearing or are not supported by record material. For example, plaintiff claims that Royce had two subordinates abduct and threaten him in order to get plaintiff to plead guilty to the possession of gang materials. But in describing the event, plaintiff points to no admissible materials that connect the incident to any defendant.[12] (Pl. Br. Opp'n Defs.' Mot. Summ. J. 10, ECF No. 60.)  Moreover, to the extent plaintiff claims that Royce taunted him or otherwise openly acknowledged his own bias, that conduct appears to have occurred in connection with the second hearing and only to have started after the first hearing was concluded. (See, e.g., Booker Decl. Opp'n Defs.' Mot. Summ. J. ¶¶ 29-33, ECF No. 61.)

Plaintiff's motion for summary judgment on his procedural due process claims is therefore DENIED, and defendants' motion for summary judgment is GRANTED as to those claims.

### iii. Eighth Amendment

Plaintiff argues that defendants Royce and Tokarz violated his Eighth Amendment right to be free from cruel and unusual punishment by causing him to endure the penalties imposed as a result of his disciplinary hearings, most notably, three months in the SHU. Because plaintiff does not point to facts that would

---

[12] That the rogue officers said Royce sent them is inadmissible hearsay.

support an Eighth Amendment claim against any defendant, the Court must grant defendant's motion for summary judgment on this claim.

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishment,' U.S. Const. amend. VIII, and applies to states through the Due Process Clause of the Fourteenth Amendment." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003) (citing Robinson v. California, 370 U.S. 660, 666-67 (1962)). For inmates complaining of prison conditions, the Eighth Amendment sets a high bar. To prove a violation of the Eighth Amendment, the Second Circuit requires a showing that (1) the plaintiff has endured conditions that are "objectively sufficiently serious" that they amount to the denial of "the minimal civilized measure of life's necessities," and (2) that the defendant possessed a "'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Here, plaintiff cannot show that defendants possessed the requisite mental state, so his claim must fail. Taking the facts in the light most favorable to Booker, he claims at most that Tokarz and Royce wrongfully intended to place him in the SHU. Nothing Booker cites suggests that Royce or Tokarz intended him to experience anything more than the ordinary conditions of the SHU.[13] Those conditions, standing alone, are insufficient to make out a violation of the Eighth Amendment. See, e.g., Branch v. Goord, No. 05 Civ. 6495, 2006 WL 2807168, at *5

---

[13] Looking at the facts in the light most favorably to plaintiff, he can also show that Tokarz and Royce intended for him to experience the other aspects of his punishment aside from the conditions in the SHU (such as loss of commissary privileges, visiting privileges with his family, etc.). All of these other penalties that resulted from the disciplinary hearings, however, fall far short of cruel and unusual punishment. Accordingly, the Court will not discuss them in further detail.

(S.D.N.Y. 2006).  While Booker does allege that he experienced some hardships beyond ordinary SHU conditions, such as the fact that officers claimed to have tampered with his food (Booker Decl. Opp'n Defs.' Mot. Summ. J. ¶ 33, ECF No. 61), he does not connect those conditions with any defendants in this matter.

The Court therefore GRANTS defendants' motion for summary judgment on this claim.

### iv.  Retaliation (First and Fourteenth Amendment)

Plaintiff also claims that defendants Royce and Tokarz retaliated against him for filing grievances and for defending himself through the prison's disciplinary hearing process.  He argues that this retaliation violated his First and Fourteenth Amendment rights.

To prove a claim of retaliation, a prison inmate must show "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).  Because "prisoner retaliation claims are 'easily fabricated,' and accordingly 'pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,'" however, courts require prisoners to support their claims with non-conclusory allegations.  Id. (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).

Here, both in his verified complaint and in his declaration in support of summary judgment, Booker supports his claims with non-conclusory allegations

16

that, among other acts of retaliation, (1) Tokarz threatened him with physical harm

if he filed a grievance (see, e.g., Second Amended Compl. ¶ 16, ECF No. 21), (2)

Tokarz ordered plaintiff strip searched and sent to the SHU for filing a grievance

(see, e.g., id. ¶ 21), and (3) Royce threatened plaintiff with physical harm to prevent

him from filing additional grievances and to induce him to plead guilty at his

hearing for possession of gang-related materials (id. ¶ 46).  Booker also supports his

claims against Tokarz with affidavits from fellow inmates who heard Tokarz

acknowledge that he had Booker thrown in the SHU in retaliation for filing a

grievance.  (Pl. Ex. 15, ECF No. 24; see also Pl. Ex. 66.)

Defendants do not dispute that filing grievances and defending himself in a

disciplinary hearing are protected activities under the First and Fourteenth

Amendments of the Constitution.  Nor do defendants dispute that the retaliatory

conduct described would deter "a similarly situated individual of ordinary firmness

from exercising his or her constitutional rights."  Dawes, 239 F.3d at 493.  Instead,

defendants merely argue that the Court should grant summary judgment in its

favor because Courts are to regard prisoner claims of retaliation with a skeptical

eye.  In other words, they argue they are entitled to summary judgment plaintiff is

a prisoner and they are state officials.  That is not how Rule 56 works.

Plaintiff has more than adequately presented facts in support of every

element of his claim of retaliation.  Defendants' motion for summary judgment on

Booker's retaliation claims is therefore DENIED.

## III.   Conclusion

For the foregoing reasons, plaintiff's motion for partial summary judgment is DENIED.  Defendants' motion for summary judgment is GRANTED as to plaintiff's due process and Eighth Amendment claims and as to plaintiff's free exercise claims against defendant Royce.  Defendants' motion for summary judgment is DENIED as to plaintiff's retaliation claims against Tokarz and Royce and as to plaintiff's free exercise claims against defendants Ercole and Bezio.[14]

The Clerk of the Court is directed to terminate the motions at docket numbers 49 and 70.

SO ORDERED

Dated:      New York, New York
            November 7, 2012

_____
KATHERINE B. FORREST
United States District Judge


Copies to:

Amin D. Booker
98-A-6245
Auburn Correctional Facility
P. O. Box 618
Auburn, NY 13024

---

[14] Defendants also argue that the Court should dismiss this complaint under the Eleventh Amendment because plaintiff failed to specify that he has sued them in their individual capacity. Nothing in Booker's claims requires the Court to construe this as a complaint against defendants in their official capacity, and the Court declines to construe it in such an unduly narrow manner.